IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **JOHN BROWN** | : | **No. 17-113-2** |

**MEMORANDUM**

PRATTER, J.                                                                                                                                       APRIL 15, 2021

John Brown is serving a 624-month sentence and seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Mr. Brown argues that relief is warranted because he received ineffective assistance of counsel. The Government disagrees. For the reasons that follow, the Court will deny Mr. Brown's *pro se* § 2255 motion.

**BACKGROUND**

In early 2015, John Brown, then 23 years old, began sexually abusing an autistic child. The victim's stepfather, Lawrence Jamieson, a co-defendant in this case, had contacted Mr. Brown to introduce him to his stepdaughter. The two men agreed that Mr. Brown would pose as a 17-year-old who attended cyber school, like the victim did, to gain the victim's trust and get her to engage in sexual activity with him. In exchange, Mr. Brown would videotape and photograph his sexual encounters with the victim and send them to Mr. Jamieson.

Mr. Jamieson also sexually abused the victim on numerous occasions. To manipulate her into compliance, he sent her text messages from a new number, posing as Mr. Brown. The messages instructed her to record her sexual activity with Mr. Jamieson and send it to "Mr. Brown" at his new number. When the victim's mother saw text messages on her daughter's phone discussing sexual activity with a person the victim identified as "L," she suspected the reference

1

was to her husband, Mr. Jamieson. The victim's mother contacted the police in August 2016. Several days later, Mr. Brown was arrested.

In March 2017, Mr. Jamieson and Mr. Brown were charged in a 42-count indictment with use of an interstate commerce facility to entice a minor to engage in sexually explicit conduct, in violation of 18 U.S.C. § 2422(b) (Counts 1 and 23); manufacture of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e) (Counts 2-16 and 37-40); transfer of obscene matter to a minor, in violation of 18 U.S.C. § 1470 (Count 24); receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Counts 17-22 and 25-28); distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Counts 29-36); and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Counts 41 and 42). Mr. Brown was charged in Counts 23-40 and 42 of the indictment.

The following month, Diane Tosta, Esq. entered her appearance as defense counsel for Mr. Brown. In August 2017, Mr. Brown and Ms. Tosta met with prosecutor pursuant to a proffer agreement and reviewed the sentencing guidelines related to the charges in the indictment. Each applicable sentencing enhancement was read to Mr. Brown and Ms. Tosta, including the relevance and application to Mr. Brown's case. The final guideline range of life imprisonment was also calculated and explained to Mr. Brown and Ms. Tosta; both expressed their understanding with respect to the calculated range of a life sentence and acknowledged that such a sentence was possible, even if Mr. Brown entered a negotiated guilty plea.

The next month, pursuant to a written plea agreement, Mr. Brown pled guilty to enticement of a minor to engage in sexually explicit conduct, in violation of 18 U.S.C. § 2422(b) (Count 23); distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count 30); manufacture of child pornography, in violation of 18 U.S.C. § 2251(a) and (e) (Counts 37-39); and possession

2

of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 42). Pursuant to the plea agreement, the Government agreed to dismiss 13 counts of the indictment at the time of sentencing.

Before accepting his guilty plea, the Court advised Mr. Brown that he faced a maximum sentence of life imprisonment, a mandatory minimum of 180 months' imprisonment, a maximum of lifetime supervised release, and significant financial punishment. The Court stressed that the sentencing guidelines called for possible life imprisonment, even with a guilty plea. The Court reminded all parties that it could impose a sentence outside of the sentencing guidelines, either lesser or longer than what the guidelines recommend. The Court also advised Mr. Brown that once the Court accepted his guilty plea, with very few exceptions, he would not be permitted to withdraw it. This was true even if he was dissatisfied with the eventual sentence that was imposed. Mr. Brown acknowledged that he understood all of this. After being advised of the rights he would be giving up, Mr. Brown told the Court that he still wished to plead guilty, stating "I am guilty. I did commit these crimes and that's why I'm pleading here today." The Court then accepted Mr. Brown's guilty plea as knowingly, intelligently, and voluntarily entered.

Mr. Brown later requested a new attorney be appointed to represent him for the sentencing phase of the case. The Court appointed the Federal Defenders Officer and attorney Elizabeth Toplin was assigned to represent Mr. Brown. In November 2018, Mr. Brown filed a Motion to Withdraw his Guilty Plea, challenging the effectiveness of the representation of his first attorney, Ms. Tosta. The Court held a hearing on the motion and testimony was received from Mr. Brown and Assistant U.S. Attorney Michelle Rotella. After the hearing, the Court denied Mr. Brown's Motion to Withdraw his Guilty Plea, finding that he had been properly advised and aware of the consequences of entering a guilty plea, and that he was not otherwise misled or tricked into entering his guilty plea, and did so knowingly, intelligently, and voluntarily.

In June 2019, the Court sentenced Mr. Brown. Based on the presentence report, the Court determined that Mr. Brown's guideline sentencing range was life imprisonment. The Court chose to vary downward from that range, and sentenced Mr. Brown to a total term of 624 months' imprisonment, lifetime supervised release, $600 in special assessments, and a $25,000 special assessment under the Justice for Victims of Trafficking Act. Mr. Brown filed a timely appeal to the Third Circuit Court of Appeals, but he withdrew his appeal in November 2019.

Mr. Brown now asks the Court to vacate his sentence pursuant to 28 U.S.C. § 2255. Mr. Brown claims that his first attorney, Ms. Tosta, provided ineffective assistance of counsel because she did not advise him of the consequences of entering a guilty plea pursuant to a written agreement with the Government as opposed to an open plea.

## LEGAL STANDARD

A prisoner in federal custody may move to vacate, set aside, or correct his sentence on the basis that the sentence violated the Constitution or laws of the United States, or that the court which imposed the sentence lacked jurisdiction. 28 U.S.C. § 2255(a). "The court is to construe a prisoner's *pro se* pleading liberally." *United States v. Sotomayor*, 146 F. Supp. 3d 667, 668 (E.D. Pa. 2015) (citation omitted). A district court has discretion in deciding whether to hold an evidentiary hearing when a defendant moves to vacate his sentence pursuant to 28 U.S.C. § 2255 and is not required to do so "[if] the motion and files and record of the case show conclusively that the movant is not entitled to relief." *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005) (quoting *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)).

## DISCUSSION

Mr. Brown's sole ground for relief in his § 2255 motion is the argument that his first attorney, Ms. Tosta, provided ineffective assistance of counsel by allegedly not advising him of

4

the consequences of pleading guilty or discussing the possibility of pleading open. As explained below, the Court denies Mr. Brown's § 2255 motion because he fails to meet the requirements of an ineffective assistance of counsel claim. The Court also declines to hold an evidentiary hearing because the record conclusively shows that Mr. Brown is not entitled to relief.

## I.     Ineffective Assistance of Counsel

In order to bring a successful claim for ineffective assistance of counsel, a petitioner must satisfy the two-pronged test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "A petitioner must prove both (1) that 'counsel's representation fell below an objective standard of reasonableness' and (2) that petitioner was prejudiced by that subpar performance." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 544 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). Given the individual circumstances of each case, each defendant, and each attorney, judicial "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. As to prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

A petitioner must satisfy both prongs to successfully maintain an ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."). A "court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." *Rolan v. Vaughn*, 445 F.3d 671, 678 (3d Cir. 2006).

Mr. Brown argues that Ms. Tosta's alleged failure to explain the ramifications of pleading guilty pursuant to an agreement as compared to pleading open was deficient. Mr. Brown claims that he would have entered an "open plea," which is when a defendant pleads guilty to all charges

5

in the indictment, without having reached any agreement with the Government. Here, that would have required Mr. Brown to enter guilty pleas to all 19 counts charged against him in the indictment, instead of the six charges he negotiated as part of his guilty plea agreement. Mr. Brown contends that he "could have advocated for a lower Guidelines range," but instead "the case proceeded to sentencing with the Guidelines range already locked in at life imprisonment." Mr. Brown also argues "that had Ms. Tosta recognized and explained to [him] the advantages of an open guilty plea [he] would have pleaded open and ultimately received a less severe sentence."

Mr. Brown's claim that Ms. Tosta never informed him about the possibility of entering an open plea is ultimately unavailing. The Government notes in its response that Ms. Tosta would willingly testify that she specifically advised Mr. Brown both of the option of pleading open to all 19 counts against him in the indictment and the option of pleading guilty to the six counts contained in the guilty plea agreement. Additionally, at his plea hearing, when asked by the Court if he had discussed the maximum possible penalties he faced with his attorney and whether he understood the ramifications of pleading guilty, Mr. Brown answered, "Yes, ma'am."

An open plea would have also resulted in a guideline sentencing range of life imprisonment. If Mr. Brown had entered an open plea, the Government would have then proceeded to prove each enhancement to the sentencing guideline calculation, which the Government argues, would have resulted in the admission into the record of damaging and horrific evidence against Mr. Brown, followed by the Court's imposition of sentence. Yet, because of his negotiated plea agreement and his stipulation to the sentencing enhancements, the Government did not need to offer such damning evidence.

Because Mr. Brown fails to show he suffered any prejudice by the entry of his negotiated plea agreement, he cannot carry his burden under *Strickland*'s prejudice prong. He attempts to

argue, against all logic and common sense, that an open plea would have likely resulted in him receiving a lower sentence. However, even if he had entered an open plea and challenged the enhancements to his sentencing guidelines, the final range would still in all likelihood have been life imprisonment. If Mr. Brown had entered an open guilty plea as to all 19 counts charged against him, his offense level would have been calculated at 51, which would have been capped at 43, the maximum allowable offense level. Under the terms of his guilty plea agreement the result was essentially the same because Mr. Brown's final offense level was calculated to be 50, but because the highest level permitted under the guidelines is 43, his offense level was capped at 43.

Although Mr. Brown also argues that he believes the enhancements were incorrectly assessed, the applicable enhancements provided for in the guidelines were correctly assessed against Mr. Brown: the victim was under the age of 16, Mr. Brown knowingly misrepresented his identity to induce the victim to engage in sexually explicit conduct, and Mr. Brown's crimes involved a sexual act, the distribution of sexually explicit images, and material that portrayed sadistic or masochistic conduct. Even if Mr. Brown had successfully challenged some of the enhancements (itself a doubtful proposition in light of the record), given the severity of his offense level, he still would have virtually certainly been subject to a guideline range of life imprisonment. And, finally, as the sentencing actually developed, the Court exercised a downward variance in Mr. Brown's sentence to 624 months' imprisonment. (The Court is not unmindful that this difference between a lifetime sentence and 624 months is of no practical significance to Mr. Brown; however, in terms of the technical matter of sentencing calculations and legal process there is a distinction.) Thus, because Mr. Brown cannot show that he would have earned a lower sentence than the one the Court ultimately imposed, Mr. Brown has failed to satisfy the prejudice prong under *Strickland*. *See Sims v. United States*, No. CIV. 11-2267 WHW, 2012 WL 1207202,

at *2 (D.N.J. Apr. 11, 2012) ("Even if counsel failed to inform defendant of his ability to enter an open plea, [he] is not entitled to relief because he cannot demonstrate prejudice . . . . Had he entered an open plea the guidelines range would have been the same as that arrived at in the plea.") (citation omitted).

A successful claim for ineffective assistance of counsel requires satisfying both prongs of the *Strickland* test. Because Mr. Brown failed to establish prejudice, his claim fails, and the Court need not address the ineffectiveness prong. However, for the reasons discussed above, it cannot be said that Ms. Tosta's representation fell below an objective standard of reasonableness. Therefore, Mr. Brown has not satisfied either prong and has failed to demonstrate a claim for ineffective assistance of counsel.

## II. Hearing

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motion, files, and records of the case show conclusively that the movant is not entitled to relief. *See United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005). Although the baseline a movant must meet to secure an evidentiary hearing may be considered low, *Booth*, 432 F. 3d at 546, it is clear in this case that Mr. Brown is not entitled to relief. Thus, he is not entitled to a hearing.

## III. Certificate of Appealability

When issuing a final order denying a § 2255 motion, the Court must also determine whether a certificate of appealability should issue. 28 U.S.C. § 2253(c)(2). Because the Court finds that Mr. Brown has not demonstrated a substantial denial of a constitutional right, a certificate will not issue.

CONCLUSION

For the foregoing reasons, the Court denies Mr. Brown's motion to vacate, set aside, or correct his sentence under § 2255. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE